IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHENNOR MARLEY BAH, )<br>)<br>*Petitioner*, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>*Respondent*. )<br>) | Civil Action No. 1:18-cr-00058<br>Hon. Liam O'Grady |

## ORDER

This matter comes before the Court on Petitioner Chennor Bah's Motion for Compassionate Release Under § 3582(c). Dkt. 68. For the reasons discussed herein, Mr. Bah's Motion is **DENIED**.

### I. FACTUAL BACKGROUND

Mr. Bah was arrested in December 2017. Dkt. 68 at 1. In February 2018, he pled guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. § 841 and § 846, and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924. *Id.* He was sentenced to 60 months in federal prison for each count, to be served consecutively, and five years of supervised release. *Id.* He is currently housed at FCI-Butner Medium II in North Carolina. Dkt. 72 at 4.

Mr. Bah is thirty-three years old. Dkt. 68-2 at 13. He has hepatitis B, which he argues makes him more susceptible to significant illness and death should he contract COVID-19. Dkt. 68 at 2. He requests that the Court consider compassionate release into home confinement pursuant

to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 Stat. 281 (2020).

## II. DISCUSSION

18 USC § 3582(c)(1)(A)(i) provides that the court has the authority to modify a term of imprisonment after it is imposed when the court finds that "extraordinary and compelling reasons" warrant the modification. This is permitted when the defendant "has fully exhausted all administrative rights" by submitting a request to the Bureau of Prisons ("BOP") and either receiving a negative response or receiving no response for thirty days. Id.

Courts have generally held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone" is not an extraordinary and compelling reason for compassionate release. *United States v. Feiling*, 453 F. Supp. 3d 832, 838 (E.D. Va. 2020) (quoting *United States v Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Furthermore, the "'fear of contracting a communicable disease' proves insufficient to justify a sentence modification." *Feiling*, 435 F. Supp. 3d at 841 (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020)). Instead, courts will find that those extraordinary and compelling reasons are present when "an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at this prison facility." *Feiling*, 435 F. Supp. 3d at 841.

Any court considering modification of a sentence must also consider the factors for imposition of sentences laid out in 18 USC § 3553(a) "to the extent that they are applicable," as required by 18 USC § 3582(c)(1)(A). *Id.* These factors include the "nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence to promote respect for the law, provide suitable punishment, and protect the public; and any other sentences available. 18 USC § 3553(a)(1).

To succeed, Mr. Bah must first establish a particularized susceptibility to COVID-19 should be catch it. *Feiling*, 435 F. Supp. 3d at 841. Bah says in his motion that he has acute hepatitis B, which he calls an "uncurable liver disease" [sic]. Dkt. 68 at 2. The Court would note that acute hepatitis B is not a chronic condition according to the CDC. Mr. Bah's medical records do not elucidate this issue; some state that he has chronic hepatitis B, others state that he has the acute form. *See* dkt. 68-2 at 1, 8, 11. For the purposes of this analysis, the Court assumes that Mr. Bah has the chronic form of hepatitis B, which is incurable.

The CDC has stated that older individuals and anyone with a serious underlying medical condition, regardless of age, may be at higher risk for severe illness from COVID-19, "particularly if the underlying medical conditions are not controlled." The CDC places people with hepatitis or other liver diseases in the category of people who *may* be at higher risk for severe complications, as opposed to people with conditions like cancer, heart conditions, or type 2 diabetes who are known to be at significantly higher risk than people with no underlying conditions. CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The Court does not intend to belittle the danger Mr. Bah faces from COVID-19 or his concern about that danger. However, he is a young man in stable condition, and it appears that he and the healthcare providers he sees at FCI-Butner Medium II have been able to manage his hepatitis B. Dkt. 68-2 at 21.

In his Motion, Mr. Bah cites a case from the Southern District of Iowa, in which that court held that a defendant's hepatitis C diagnosis constituted an extraordinary and compelling circumstance justifying compassionate release during the COVID-19 pandemic. *United States v. Stephenson*, 461 F. Supp. 3d 864 (S.D. Iowa 2020). That court acknowledged medical studies

suggesting that hepatitis C has a devastating effect on an individual's immune system. *Id.* This Court was unable to find any literature suggesting hepatitis B has the same effect on the immune system. Furthermore, the defendant's diagnosis was not the only factor that court considered; that defendant had already served fifteen years of a twenty-two-year sentence when he requested compassionate release, and had completed a 500-hour drug abuse program and an associate degree while he was incarcerated. *Id.* at 866. These facts speak to the § 3553 factors, addressed below, and make clear that the defendant's diagnosis was not the only reason why he was granted his request for compassionate release. For the foregoing reasons, Mr. Bah is unlikely to be able to show that he has a particularized susceptibility to COVID-19. However, we continue with our analysis.

Mr. Bah's next step is to establish that he has a particularized risk of contracting COVID-19 at FCI-Butner Medium II. *Feiling*, 435 F. Supp. 3d at 841. He claims that the facility had over a thousand cases of the virus at the time he filed his Motion, and that seventeen inmates and two staff members had died from it. Dkt. 75 at 3. The government, on the other hand, claims that five inmates and two staff members had tested positive at the time it filed its Response, and that all have recovered.[1] Dkt. 72 at 4. At the time of this writing, BOP reports only twenty-five positive tests from FCI-Butner Medium II since the beginning of the pandemic. Bureau of Prisons, "COVID-19 Inmate Test Information," https://www.bop.gov/coronavirus/ index.jsp. These statistics suggest that FCI-Butner Medium II is controlling the spread of disease reasonably well.

In addition to considering Mr. Bah's likelihood of contracting COVID-19 in prison, the Court must also consider his likelihood of contracting the disease if his request for compassionate

---

[1] The government suggests that the discrepancy between its count and Mr. Bah's may be caused by Mr. Bah confusing the statistics for his facility, Butner Medium II, with those of Butner Medium I, which has had significantly more confirmed cases. Dkt. 72 at fn. 1.

4

release is granted. *Feiling*, 435 F. Supp. 3d at 841–842. Mr. Bah intends to resume living with his fiancée, as he did before being incarcerated. Dkt. 68 at 9. The government notes, however, that Mr. Bah is not a citizen of the United States, and that Immigration and Customs Enforcement ("ICE") has filed a detainer and intends to take Mr. Bah into custody upon his release from prison. Dkt. 72 at 8. While this detainer does not render him ineligible for compassionate release (*see United States v. Al-Jumail*, 459 F. Supp. 3d 857, 866 (E.D. Mich. 2020) (*quoting* 04-03-2020 Directive to BOP, at 2)), it does mean that the Court must compare his likelihood of contracting COVID-19 in prison to his likelihood of contracting it in ICE custody. The facility to which ICE intends to send Mr. Bah has recorded three hundred confirmed cases of COVID-19. Dkt. 72 at 8. Mr. Bah's risk of contracting COVID-19 is actually lower in FCI-Butner Medium II than it would be if the Court granted his request for compassionate release.

The final element that the Court must consider is the factors laid out in 18 USC § 3553(a), which governs the imposition and modification of criminal sentences. 18 USC § 3582. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the kinds of sentences available. 18 USC § 3553(a).

Mr. Bah claims that if the Court considers his history and characteristics, it will recognize that he was charged with crimes "not of terrorism and did not involve a minor victim" and that "he was a severely misguided young man who made serious mistakes that clearly do not reflect who he is today." Dkt. 68 at 6. Bah was thirty years old when he was arrested. Prior to his arrest and conviction, his primary source of income was trafficking cocaine, which he obtained from a close friend who was a member of the Imperial Gangsta Blood gang. Dkt. 72 at 1–2. His fiancée, who he intends to live with if he is transferred to home confinement, lived with him when he engaged

in these drug trafficking activities and was aware that he kept cocaine and firearms in their apartment. Id. at 2. As of the filing of his Motion in August 2020, Mr. Bah had served thirty-three months of his 120-month sentence.

Mr. Bah also claims to be completely rehabilitated. Dkt. 68 at 7. His fiancée submitted a letter to the Court calling him an "outstanding father and great individual." Dkt 71. He has completed a handful of courses while incarcerated, including the Alternatives to Violence Workshop (Dkt. 68-2 at 14), some sort of drug education course (*id.* at 15, the name of the course is illegible), a program called Fathers on the Move (*id.* at 16), and a Suicide Watch Inmate Observer program (*id.* at 18). The Court commends Mr. Bah on the steps he has taken to better himself over the past three years and is confident his efforts will serve him well upon his release. However, he provides no evidence to suggest that he has cut ties with the gang members he was close to before his arrest. Furthermore, while no amount of time in prison can be considered insignificant, a three-year incarceration simply does not reflect the seriousness of Mr. Bah's crimes. Overall, the § 3553 factors weigh in favor of denying Mr. Bah's request for compassionate release.

### III. CONCLUSION

For the foregoing reasons, Mr. Bah's Motion for Compassionate Release under § 3582(c) is **DENIED**.

It is **SO ORDERED.**

November 10, 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge

6