

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

CHENNOR MARLEY BAH, )
    Petitioner, )
                        )
                        )      Case No. 1:18-cr-58
                        )
    V. )
                        )
                        )
UNITED STATES OF AMERICA, )
    Respondent. )

## MOTION TO RECONSIDER COMPASSIONATE RELEASE REQUEST

NOW COMES, the Petitioner, Chennor Marley Bah, proceeding pro se in the above captioned cause, respectfully move this Court to reconsider the denial of his motion for compassionate release. This request is made in good faith and supported by newly discovered evidence that the Court: (1) made a clear error of fact in finding that Mr. Bah was not at risk of severe illness or death from COVID-19; (2) made a clear error of fact in finding that conditions at FCI Butner Medium II are not dire, in light of the reported infection rate at Butner Medium 2; (3) made a clear error of law and fact in finding that hepatitis B, in combination with rehabilitation and the high risk of contagion at Butner did not constitute an "extraordinary and compelling reason" for relief; and (4) made an error of law and fact when it assumed that Bah provided no evidence to suggest that he has cut ties with gang members he was close to before his arrest."

### I. LEGAL STANDARD

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") recognizes three limited grounds a district court's grant of a motion for reconsideration: (1) to accommodate an inter-

vening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). See also Pendergrass v. United States, 2001 U.S. Dist. LEXIS 23933, at 1-2 (D.S.C. 2001). The Fourth Circuit has emphasized that mere disagreement with the Court's ruling does not warrant reconsideration. Hutchinson, at 1081 (citing Atkins v. Marathon Le Tourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990)). Instead, a motion for reconsideration exists for the purposes of allowing "the court to reevaluate the basis for its decision." Keyes v. Nat'l R.R. Passenger Corp., 766 F.Supp. 277, 280 (E.D. Pa. 1991). A motion for reconsideration is not a tool with which an unsuccessful party may "'rehash' the same arguments and facts previously presented." Id.; Pendergrass, 2001 U.S. Dist. LEXIS 23933 at *2.

In sum, the Court [can] grant Mr. Bah's motion for reconsideration for two reasons: (1) the motion attaches new evidence...; and (2) considering the new evidence, it would be a manifest injustice not to reconsider the Court's prior ruling. See Zellner v. United States, 2020 U.S. Dist LEXIS 160243 (E.D. Va. Sept. 1, 2020) (quoting Hutchinson, 993 F.2d 1081.

## II. REASON FOR RECONSIDERATION

### CASE LAW AND SCIENTIFIC EVIDENCE UNDERCUTS THE COURT'S FACTUAL CLAIMS THAT HEPATITIS B. IS NOT A RISK FACTOR FOR COVID-19

A. In Petitioner's Motion for Compassionate Release, he discussed health challenges related to his liver disease caused by hepatitis B. (See Exhibit A, at 2    ). The Court denied Mr. Bah's motion for compassionate release due, in part, to the court's finding that:

> "In his Motion, Mr. Bah cites a case from the Southern District of Iowa, in which that court held that a defendant's hepatitis C diagnosis constituted an extraordinary and compelling circumstance justifying compassionate release during the COVID-19 pandemic. United States v. Stephenson, 461 F. Supp. 3d 864 (S.D. Iowa 2020). That Court acknowledged medical studies suggesting that hepatitis C has imma devasting effect on an individuals immune system. Id. This Court was unable to find any literature suggesting hepatitis B has the same effect on the immune system....For the foregoing reasons, Mr. Bah is unlikely to be able to show that he has a particularized susceptibility to COVID-19."

(See Dist. Ct. Order, Doc. 77, at 3-4). As a general matter, this court overlooked Bah's letter of October 24, 2020, requesting to add additional authority in support of the pending motion for compassionate release. Specifically, this court suggested that "it was unable to find any literature suggesting hepatitis B has the same effect on the immune system. However, contrary to the district court's order, Mr. bah cite United States v. Ludwig, 2020 U.S. Dist. LEXIS 140934 (E.D. Cal. Aug. 6, 2020), which supports his claim that hepatitis B and C has the same effects on the bodies health and immune system.

Ludwig filed a motion for compassionate release arguing "his

history of hepatitis B and C make[s] him particularly susceptible to developing serious complications from a COVID-19 infection and, paired with the outbreak at the facility where he is housed, "extraordinary and compelling reasons" warrant compassionate release." 2020 U.S. Dist. LEXIS 4-5.

The district court recognized that "[o]ther district courts have found hepatitis B and C constitutes medical conditions that increase the risk of severe illness from coronavirus warranting release, without necessarily clarifying whether the hepatitis is active, in remission or resolved." Ludwig, 2020 U.S. Dist. LEXIS *10-11, citing United States v. Connor, 2020 U.S. Dist. LEXIS 99939, [] (N.D. Iowa June 8, 2020) (granting motion for compassionate release by petitioner with ongoing hepatitis B and C diagnosis); United States v. Galloway, 2020 U.S. Dist. LEXIS 89689 (D. Md. May 21, 2020) (finding extraordinary and compelling reasons where BOP records indicate Petitioner suffered in part from hepatitis B); and United States v. White, 2020 U.S. Dist. LEXIS 103974 (S.D.W, Va. June 12, 2020) (granting compassionate release to prisoner suffering from a liver disease, hepatitis....).[1]

---

1. In Ludwig, the district court recognized that the "court's observation in Stephenson [was] supported by reputable public health information. The Ludwig Court [took] Judicial Notice under Federal Rule of Evidence 201(c)(1) of information provided by CDC regarding hepatitis B and Hepatitis C suggesting one does not fully recover from either condition. In answering the question "what is hepatitis B?" the CDC explains:
> Although people with lifelong hepatitis B usually don't have symptoms, the virus causes liver damage over time and could lead to liver cancer. There is no cure for hepatitis B, but treatment can help prevent serious problems. https://www.cdc.gov/vaccines/partents/hepb.hmtl. See also https://www.cdc.gov/coronavirus/2019-ncov/need-extra-pre cautions/what-you-can-do.html (People with Underlying Medical Conditions" link to page identifying "Liver Disease" as a condition that might put a person at increased risk; "Liver Disease" links to information including statistics on liver disease cause by viral hepatitis).

4

In this case, it is undisputed that Petitioner suffers from chronic hepatitis B. (See Exhibit B, Updated Medical Records). The district court has acknowledged this fact as well. (See Dist.Ct. Order at 3). ("The Court would note that accute hepatitis B is not a chronic condition according to the CDC. Mr. Bah's medical records do not elucidate this issue; some state that he has chronic hepatitis B, others state that he has the acute form. [] For the purpose of this analysis, the court assumes that Mr. Bah has chronic form of hepatitis B, which is incurrable."). Therefore, as the CDC has recognized, Petitioner will never fully recover from a disease that renders him immunocompromised and put him at a higher risk of COVID-19 infections.

In addition, the district court failed to acknowledge or address Petitioners claim that he also suffers from a liver disease/damage. (See Exhibit A, at __2__). Attached as part of the record, Mr. Bah's more recent lab reports from March 27, 2020 shows that his HBV VL to be 487 as of March 18, 2020. (See Exhibit B). The report noted the increase in HBV from 66 in January 20, 2020. Id. The report also held in the REASONS FOR REQUEST: "Inmate with hx of HBV with increased VL from 66 (1/20/20) to 487 (3/18/20). Liver enzymes are wnl. Needs f/u for treatment recommendations." The July 9, 2019 lab report (LIS ID 182192090) revealed that his liver enzymes, alanine transaminase (ALT) and Bilirubin Total are deemed "high," Id. at ___, which often indicates inflamation or damage to cells in the liver assocaited with hepatitis." See <u>Ludwig</u>, 2020 U.S. Dist. LEXIS 11 ("Inflamed or injured liver cells leak higher than normal amounts of certain chemicals, including liver enzymes, into the bloodstream, elevating live enzymes on blood tests.") (quoting Mayo Clinic,

5

Symptoms [of] Elevated Liver Enzymes (last updated March 5, 2020)).
Id. at 11-12.

Petitioner has not been tested or vaccinated for COVID-19, and it is impossible to follow CDC's recommendations in this environment where he is housed in a small cell with another inmate and the double beds, lockers, uncovered toilet, sink and table takes up 70% of the living space. The CDC recommends individuals liver disese, which includes disease caused by hepatitis B and C, protect themselves from COVID-19, by inter alia: "Keep[ing] space [6-feet] between yourself and others," "Stay[ing] home," and [c]leaning your hands often by washing with soap and water or using an alcohol-based sanitizer." CDC, How to Protect Yourself & Others (last updated April 24, 2020). The recommendations emphasize that "[k]eeping distance fromothers is especially important for people who are at higher risk of getting very sick." Ludwig, 2020 U.S. Dist. LEXIS 13-14.

Because there is valid overlooked authority to support Mr. Bah's request, and his medical condition puts him at a higher risk of suffering from serious, possibly life-threatening, medical consequences if he contracts COVID-19, this Court should reconsider his request for compassionate release.

## B. MR. BAH IS AT HIGHER RISK OF CONTRACTING COVID AT BUTNER-II

In the district courts order, it noted that, "[t]he government, on the other hand, claims that five inmates and two staff members had tested positive at the time it filed its Response, and that all have "recovered." (See Dist. Ct. Order at 4). The Court further stated, "[a]t the time of this writing, BOP reports only twenty-five positive test from FCI-Butner Medium II since the beginning of the pandemic.... These statistics suggest that FCI-Butner Medium II is

controlling the spread of the disease reasonably well." Id. However, contrary the district court's Order, FCI-Butner Medium II is presently suffering a second and more vicious wave of COVID-19. (See Exhibit C, Memorandum from Warden Leu, dated December 30, 2020).

> Today numerous inmates at FCI-2 reported symptoms and later tested positive for COVID-19. Due to the sudden increase of positive cases in general population the institution will run on a "Stay in Shelter" lockdown in order to cease the spread of the COVID-19 virus."

COVID-19 is a highly contagious and deadly pandemic that has raced across the globe, fundamentally altering life for everyone in such a short period of time. But even more frightening is experts have warned of a possible second (or third) wave.[2] As health care professionals predict, COVID-19 will continue to be prevalent for at least the next 12-18 months, i.e., through June - December 2021, and until such time as is widespread treatment and a vaccine.

The risk of contracting COVID-19 within a federal prison far exceeds the risk that exists in the community at large. As of November 16, 2020, the BOP reported that of the 125,375 prisoners in BOP managed institutions, 3121 have confirmed positive test results for COVID-19 nationwide, 17,168 have purportedly "recovered" from the disease, and 137 have died.[3] At least 18 of these deaths occurred after an inmate test negative or BOP erroneously pronounced

---

2. See Coronavirus: US health officials warns of dangerous second wave, BBC NEWS, https://www.bbc.com/news/world-us-canada-52378845 ("A second wave of coronavirus cases in the US cuold be even worse tan the first the country's top health official has warned. [CDC] Director Robert Redfield said the danger was high as a fresh outbreak would likely coincide with the flu season.").
3. Fed. Bur. of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus (lasted visted Nov. 16, 2020).

them recovered."4 Moreover, of the approximately 36,000 BOP staff, 1,048 have confirmed positive tests results, 1,605 have recovered," and 2 have died. Id.

The infection rate in the BOP is staggering, with those in BOP custody infected at a rate <u>approximately 5 times higher</u> than those outside of BOP custody, and inmates are continuing to die.5

There is ample precedent to support compassionate release in light of Mr. Bah's particular susceptibility and vulnerability to COVID-19. Courts in the Fourth Circuit and across the country have found that a defendant's hightened risk and partifular vulnerability to COVID-19 in prison constitutes an "extraordinary and compelling reason" in favor of compassionate release.6

---

4. Justin Wm. Moyer and Neena Satija, "Frail inmates could be sent home to prevent the spread of COVID-19. Instead, some are dying in federal prisons." WASH. POST (Aug. 3, 2020), available at https://www.washingtonpost.com/local/public-safety/frail-inmates-could-be-sent-home-to-prevent-the-spread-of-covid-19.instead-some-are-dying-in-federal-prison/2020/08/02/992fd484-b636-11ea-9bof-c797548c1154_story.html.

5. Federal Defenders of New York, "COVID-19 Rates of Infection for Various Populations" (Aug. 10, 2020) available at https://federaldefendersny.org/assets/uploads.BOP_COVID-19_Charts_and_Graphs.pdf (compiling and analyzing up-to-date statistics from the BOP's website).

6. See, e.g., <u>United States v. Fletcher</u>, No. 8:00-cr-00179-TDC, DKT. No. 856 at 4 (E.D. Va. July 13, 2020) (finding extraordinary and compelling reasons where "an inmate is incarcerated within a prison in which there is imminent risk exposure ... and ... high risk of death or serious illness"); <u>United States v. Robinson</u>, No. 3:10-cr-00261-MHL, Dkt. No. 86 at 11 (E.D. Va. July 17, 2020) (granting compassionate release where inmate's hypertension and conditions at FCI Fort Dix created increased risk of contracting COVID-19 and experiencing severe illness); <u>United States v. Jacobs</u>, No. 19-cr-149, ECF No 84 at 10 (S.D. Ia. July 2, 2020) ("The number of courts agreeing the mere threat of COVID-19 constitutes an extraordinary and compelling reason supporting release still grows by the day."); (collecting cases).

Even in the abscence of advanced age and severe medical conditions, courts have granted compassionate release based on the dangerousness of carceral settings in the wake of this highly contagious pandemic.[7] This reflects an understanding that elderly and inform inmates are not the only ones at risk of serious illness and death; For example, a 37-year old man at FCI Lompoc who was otherwise healthy contracted the virus, suffered intensely for over a week, and was ignored by prison guards until he died in his cell.[8] Moreover, that a facility has no reported cases does not mean it has no cases, given the lack of widespread testing, nor does it mean it is protected from future outbreaks. For example, the layout of a prison may cause greater vulnerability, and if there are confirmed cases in the county in which the facility is located, there is a greater likelihood of COVID-19 entering the facility in the near future.[9]

---

7. See, e.g., United States v. Latney, No. 1:19-cr-00202-AJT, Dkt. No. 36 at 6 (E.D. Va. June 2, 2020) (granting compassionate release to 25-year-old with asthma); United Sttaes v. Kelly, 13-CR-59-CWR-LRA (DE 145:1 & 13) (S.D. Miss. May 1, 2020) (granting compassionate release to an individual in his later 20's without health issues where BOP failed to control the outbreak of COVID-19 at his facility); United States v. Chestnut, 09-CR-06071-DGL-MWP (DE 925) (W.D.N.Y. Apr. 29, 2020) (granting compassionate release despite the fact that Mr. Chestnut was not vulnerable based on a compromised immune system or pre-existing medical condition.).
8. See Tyler Hayden, "More Suffering and Death at Lompoc Prison Racked with COVID-19," Santa Barbara Independent (May 29, 2020), available at https://www.independent.com/2020/05/29/more-suffering-and-death-at-lompoc-prison-wracked-with-covid-19/
9. United States v. Weatherly, No. 1:12-cr-00477-AJT, Dkt. No. 165 at 3-4 (E.D. Va. May 19, 2020) ("Although there are currently no confirmed cases at his prison, the Government notes that the 'open bay style housing' of Defendant's prison would make inmates more vulnerable to COVID-19, and there are currently confirmed cases in the county in which the facility is located, increasing the likelihood that COVID-19 may soon enter the prison. ... Therefore, the Court finds that Defendant has demonstrated that extraordinary and compelling reasons exist to grant him compassionate release.").

The presence of a single case is all that is required for the virus to spread within the facility, thereby placing Bah at significant risk of contracting COVID-19. That life threatening danger is present today.[9] (See Exhibit C). Therefore, Mr. Bah's request for compassionate release should be reconsidered with the newly developed crisis here at FCI Butner Medium II because experts say he is not safer in prison than he would be if he were released so that he could properly socially distance.

C. **EXTRAORDINARY AND COMPELLING REASONS**

Petitioner satisfies U.S.S.G. § 1B1.13 cmt. n.1(A)(ii), which provides that a reduction in sentence is warranted if a defendant is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Despite what may be the BOP's best efforts to control the spread of COVID-19, and FCI Butner Medium II's attemp to implement those efforts, (See Dist. Ct. Order at ___), the record is clear that Mr. Bah cannot comply with the CDC's recommendations while incarcerated at FCI Butner II. First, as shown above, and by exhibit, the numerous identified cases of COVID-19 at FCI Butner Medium II amng the inmate population where Bah is housed are increasing, with the spread at other institutions in the complex as ell. (See Exhibit

---

9. A Google search revealed that the State of North Carolina has 541,000 active case and 6,811 deaths. Wake County, Oxford, Creed Moore, and Garner Counties had 44,203 cases and 344 deaths. Durham has 15,173 case and 144 deaths. (last visited January 2, 2021).

C ). Secon, Mr. bah lives in a small cell with another inmate, which only provides a "couple of feet" of space between each of them. There is no evidence, period, that suggest the BOP's efforts, measures, or options are proving effective in preventing particularized COVID-19 exposure to residents of FCI Butner Medium II.

Moreover, Bah's combination of medical conditions, including chronic hepatitis B and evidence of liver damage/disease, presents the kind of comorbidities that exacerate his risk of contracting COVID-19. See United States v. Bradley, 2020 U.S. Dist. LEXIS 119962 (E.D. Cal. July 7, 2020) (finding defendant's combination of serious health conditions weighs heavily in favor of sentence reduction); see also FN. 1.

In sum, extraordinary and compelling reasons support granting Bah compassionate release. Ludwig, 2020 U.S. Dist. LEXIS 18-19.

### D. SENTENCING GUIDELINES AND DANGER IN SOCIETY

The Sentencing Guidelines advise that "the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." United States v. Esparza, 2020 U.S. Dist. LEXIS 65271; See also 18 U.S.C. § 3582(c)(1)(A).

The district court's order acknowledged Mr. Bah's solid release plan and rehabilitative efforts. However, it stated:

> "The Court commends Mr. Bah on the steps he
> has taken to better himself over the past

> three years and is confident his efforts will serve him well upon his release. However, <u>he provides no evidence to suggest that he has cut ties with the gang members he has close to before his arrest</u>. Furthermore, while no amount of time in prison can be considered insignificant, a three year incarceration simply does not reflect the seriousness of Mr. Bah's crimes. Overall, the § 3553(a) factors weigh in favor of denying Mr. Bah's request for compassionate release."

(See Dist. Ct. Order, Doc. 77 at 6) (emphasis added).

There is no question that Bah is not a danger to society or his community. He pled guilty to a nonviolent offense. He has no violence in his criminal history. Neither does Mr. Bah have <u>any</u> ties or affiliations to gangs, gang members, or associates. (See Exhibit <u>D</u>). To the contrary, Mr. Bah has an exemplary record while in prison, with not disciplinary infractions. Importantly, Bah has shown consistent evidence of rehabilitation as noted by the court. (See Doc. 77 at 6). He has been successfully employed in UNICOR/P.I.E. and has received "outstanding" performance ratings by his supervisor's. (See Exhibit <u>E</u>). Indeed, at paragraph F on the Performance Sheet, Bah's supervisor's states, "[n]o supervision required. Completely dependable in all things." These BOP Staff members and contract workers who physically observe Mr. Bah's demeanor, character, and work ethics on a daily basis believes he is outstanding, doesn't need supervision, and isdepend-dependable in all things. Bah asks this Court to believe in him as well. <u>United Sttes v. Parker</u>, No. 2:98-CR-00749-CAS-1, 2020 U.S. Dist. LEXIS 89904 (C.D. Cal. May 21, 2020) (finding evidence

12

of defendant's rehabilitation weighted in favor of granting motion for compassionate release and any risk of danger associated with sentence reduction could be further mitigated by supervised release). Therefore, in light of the foregoing, Mr. Bah does not present a risk of danger to the community as articulated in 18 U.S.C. § 3142(g).

## CONCLUSION

For the foregoing reasons, Mr. Bah's prayer is that this Court will take into consideration the supporting authority, newly developed evidence, records, scientific research, and CDC guidance when reconsidering his motion for compassionate release.

RESPECTFULLY SUBMITTED this 7th day of January, 2021.

Bhennor Marley Bah
Reg. No. 91719-083
FCI Butner Medium II
P.O. Box 1500
Butner, NC 27509

## CERTIFICATE OF SERVICE

I, Chennor Marley Bah, certify that I have sent the original copy of my "Motion to Reconsider Compassionate Release," to the United States District Court for the Eastern District of Virginia, Alexandria Division, vial the institional legal mail here at FCI Butner Medium II, this 7th day of January, 2021.

RESPECTFULLY SUBMITTED,

Chennor Marley Bah
Reg. No. 91719-083
FCI Butner Medium II
P.O. Box 1500
Butner, NC 27509


cc: